UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED:  9/15/2023
```

-----------------------------------------------------------------X
:
MILAGRO N. RIVERA,                                               :
:
                            Plaintiff,                           :          22-CV-6976 (RWL)
:
            - against -                                          :
:          **DECISION AND ORDER:**
:          <u>**SOCIAL SECURITY APPEAL**</u>
:
KILOLO KIJAKAZI,                                                 :
Acting Commissioner of Social Security,                         :
:
                            Defendant.                           :
-----------------------------------------------------------------X

**ROBERT W. LEHRBURGER, United States Magistrate Judge.**

Plaintiff Milagro N. Rivera ("Rivera"), represented by counsel, commenced the
instant action against the Acting Commissioner (the "Commissioner") of the Social
Security Administration (the "Administration"), pursuant to the Social Security Act (the
"Act"), 42 U.S.C. § 405(g), seeking review of the Commissioner's decision that Rivera is
not entitled to supplemental social security income ("SSI").  Rivera has moved for
judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure,
asking the Court to vacate the administrative decision and reverse or remand the case
for a new hearing and decision.  The Commissioner has cross-moved for judgment on
the pleadings, asking the Court to affirm the Commissioner's decision.  For the reasons
explained below, the Court GRANTS Rivera's motion and DENIES the Commissioner's
motion.

# LEGAL STANDARDS

## A.   Standard Of Review

A United States District Court may affirm, modify, or reverse (with or without remand) a final decision of the Commissioner.   42 U.S.C. § 405(g); *Skrodzki v. Commissioner of Social Security Administration*, 693 F. App'x 29, 29 (2d Cir. 2017) (summary order).  The inquiry is "whether the correct legal standards were applied and whether substantial evidence supports the decision." *Butts v. Barnhart*, 388 F.3d 377, 384 (2d Cir. 2004); *accord Talavera v. Astrue,* 697 F.3d 145, 151 (2d Cir. 2012).

"'Failure to apply the correct legal standard constitutes reversible error, including, in certain circumstances, failure to adhere to the applicable regulations.'" *Douglass v. Astrue*, 496 F. App'x 154, 156 (2d Cir. 2012) (quoting *Kohler v. Astrue*, 546 F.3d 260, 265 (2d Cir. 2008) (remanding for noncompliance with regulations)).  Courts review de novo whether the correct legal principles were applied and whether the legal conclusions made by the Administrative Law Judge ("ALJ") were based on those principles.  *See Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987) (reversing where the court could not "ascertain whether [the ALJ] applied the correct legal principles … in assessing [plaintiff's] eligibility for disability benefits"); *Townley v. Heckler*, 748 F.2d 109, 112 (2d Cir. 1984) (reversing where the Commissioner's decision "was not in conformity with the regulations promulgated under the Social Security Act"); *Thomas v. Astrue*, 674 F. Supp.2d 507, 515, 520 (S.D.N.Y. 2009) (reversing for legal error after de novo consideration).

If the reviewing court is satisfied that the ALJ applied the correct legal standards, then the court must "'conduct a plenary review of the administrative record to determine if there is substantial evidence, considering the record as a whole, to support the

Commissioner's decision.'"  *Brault v. Social Security Administration, Commissioner*, 683 F.3d 443, 447 (2d Cir. 2012) (per curiam) (quoting *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009)).  Substantial evidence is defined as "'more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998) (quoting *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427 (1971)); *see also Biestek v. Berryhill*, __ U.S. __, __, 139 S. Ct. 1148, 1154 (2019) (reaffirming same standard).   "The substantial evidence standard means once an ALJ finds facts, [the court] can reject those facts only if a reasonable factfinder would *have to conclude otherwise*."  *Brault*, 683 F.3d at 448 (internal quotation marks omitted) (emphasis in original); *see also* 42 U.S.C. § 405(g) ("findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive").

To be supported by substantial evidence, the ALJ's decision must be based on consideration of "all evidence available in [the claimant]'s case record."  42 U.S.C. § 423(d)(5)(B).  The Act requires the ALJ to set forth "a discussion of the evidence" and the "reasons upon which [the decision] is based."  42 U.S.C. § 405(b)(1).  While the ALJ's decision need not "mention[ ] every item of testimony presented," *Mongeur v. Heckler*, 722 F.2d 1033, 1040 (2d Cir. 1983) (per curiam), or "'reconcile explicitly every conflicting shred of medical testimony,'" *Zabala v. Astrue*, 595 F.3d 402, 410 (2d Cir. 2010) (quoting *Fiorello v. Heckler*, 725 F.2d 174, 176 (2d Cir. 1983), the ALJ may not ignore or mischaracterize evidence of a person's alleged disability.   *See Ericksson v. Commissioner of Social Security*, 557 F.3d 79, 82-84 (2d Cir. 2009) (mischaracterizing evidence); *Kohler*, 546 F.3d at 268-69 (overlooking and mischaracterizing evidence); *Ruiz*

*v. Barnhart*, No. 01-CV-1120, 2002 WL 826812, at *6 (S.D.N.Y. May 1, 2002) (ignoring evidence).

Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. *Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982). The court must afford the Commissioner's determination considerable deference and "'may not substitute its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a *de novo* review.'" *Jones v. Sullivan*, 949 F.2d 57, 59 (2d Cir. 1991) (quoting *Valente v. Secretary of Health and Human Services*, 733 F.2d 1037, 1041 (2d Cir. 1984)); *Dunston v. Colvin*, No. 14-CV-3859, 2015 WL 54169, at *4 (S.D.N.Y. Jan. 5, 2015) (same) (quoting *Jones*, 949 F.2d at 59), *R. & R. adopted*, 2015 WL 1514837 (S.D.N.Y. Apr. 2, 2015). Accordingly, if a court finds that there is substantial evidence supporting the Commissioner's decision, the court must uphold the decision, even if there is also substantial evidence for the claimant's position. *Genier v. Astrue*, 606 F.3d 46, 49 (2d Cir. 2010). "The Court, however, will not defer to the Commissioner's determination if it is the product of legal error." *Dunston*, 2015 WL 54169, at *4 (internal quotation marks omitted) (citing, *inter alia*, *Douglass*, 496 F. App'x at 156; *Tejada v. Apfel*, 167 F.3d 770, 773 (2d Cir. 1999)).

**B.    Determination Of Disability**

Under the Act, a person meeting certain requirements and considered to have a disability is entitled to disability benefits. 42 U.S.C. § 423(a)(1). The Act defines disability as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12

4

months."  42 U.S.C. § 423(d)(1)(A).  A claimant's impairments must be "of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy."  42 U.S.C. § 423(d)(2)(A).

To determine whether an individual is disabled and therefore entitled to disability benefits, the Commissioner conducts a five-step inquiry.  20 C.F.R. § 416.920.[1]  First, the Commissioner must determine whether the claimant is currently engaged in any substantial gainful activity.  20 C.F.R. § 416.920(a)(4)(i), (b).  If so, the claimant is not eligible for benefits and the inquiry ceases.  20 C.F.R. § 416.920(a)(4)(i).

If the claimant is not engaged in any such activity, the Commissioner proceeds to the second step and must determine whether the claimant has a "severe impairment," which is an impairment or combination of impairments that significantly limits the claimant's ability to perform basic work activities.  20 C.F.R. § 416.920(a)(4)(ii), (c).  If the claimant does not have an impairment or combination of impairments that are severe, the claimant is not entitled to benefits and the inquiry ends.  20 C.F.R. § 416.920(a)(4)(ii).

If the claimant has a severe impairment or combination of impairments, the Commissioner continues to step three and must determine whether the impairment or

---

[1] Because this case is about Rivera's application for SSI benefits, the Court cites to regulatory standards primarily for SSI determinations, which are found at 20 C.F.R. § 416.901, *et seq*.  Parallel standards for DIB are found at 20 C.F.R. § 404.900, *et seq.*. *See Coulter v. Commissioner of Social Security*, No. 22-CV-1149, 2023 WL 3346505, at *2 n.1 (S.D.N.Y. May 10, 2023) ("The regulations for disability and disability insurance and supplemental security income benefits are virtually identical.  The DIB regulations are found at 20 C.F.R. § 404.900, *et seq.*, while the parallel SSI regulations are found at 20 C.F.R. § 416.901, *et seq.*") (quoting *Canter v. Saul*, No. 19-CV-00157, 2020 WL 887451, at *1 n.2 (D. Conn. Feb. 24, 2020)).

combinations of impairments is, or medically equals, one of those included in the "Listings" of the regulations contained at 20 C.F.R. Part 404, Subpart P, Appendix 1. If the claimant's impairment or impairments meet or medically equal one of those Listings, the Commissioner will presume the claimant to be disabled, and the claimant will be eligible for benefits. 20 C.F.R. § 416.920(a)(4)(iii), (d).

If the claimant does not meet the criteria for being presumed disabled, the Commissioner continues to step four and must assess the claimant's residual functional capacity ("RFC"), which is the claimant's ability to perform physical and mental work activities on a sustained basis despite his or her impairments. The Commissioner then determines whether the claimant possesses the RFC to perform the claimant's past work. 20 C.F.R. § 416.920(a)(4)(iv), (e), (f), (h). If so, the claimant is not eligible for benefits and the inquiry ceases. 20 C.F.R. § 416.920(a)(4)(iv).

If the claimant is not capable of performing their prior work, the Commissioner must continue to step five and determine whether the claimant is capable of performing other work sufficiently available in the national economy. 20 C.F.R. § 416.920(a)(4)(v), (g), (h). If the claimant can perform other available work, the claimant is not entitled to benefits. 20 C.F.R. § 416.920(a)(4)(v). The claimant bears the burden of proof for the first four steps. *Selian v. Astrue*, 708 F.3d 409, 418 (2d Cir. 2013). Once the claimant has established that they are unable to perform their past work, however, the Commissioner bears the burden of showing at the fifth step that "there is other gainful work in the national economy which the claimant could perform." *Balsamo v. Chater*, 142 F.3d 75, 80 (2d Cir. 1998) (internal quotation marks omitted).

## FACTUAL AND PROCEDURAL BACKGROUND

The Court sets forth here a brief summary of the case to provide context for understanding the discussion that follows.  Additional salient facts are referenced in the discussion.  A fuller statement of relevant facts can be found in Rivera's Memorandum of Law in Support of her Motion for Judgment on the Pleadings ("Pl. Mem.," Dkt. 21-1 at 1-7), which the Commissioner adopts, with the exception of any inferences, arguments, or conclusions asserted therein.  (Memorandum of Law in Opposition to Plaintiff's Motion for Judgment on the Pleadings and in Support of Defendant's Cross-Motion for Judgment on the Pleadings ("Def. Mem."), Dkt. 26 at 2).

### A.    Rivera

Rivera was born in 1976.  (*See* R. 958.[2])  She has a limited education, having gone through eighth grade.  (R. 1019.)  She previously worked as a deli counter clerk.  (R. 1022.)  She has not worked since then purportedly due to her anxiety and other mental and physical conditions.  (*See* R. 1020-21.)  According to Rivera, she can no longer work because she cannot finish things on time, and would, as in the past, frequently be absent and late to work, all due to her anxiety and other ailments.  (R. 1020-21, 1023.)  Although she has a driver's license, she no longer drives and does not travel without being accompanied by someone else, typically her husband.  (R. 1019-20, 1029.)  Among other afflictions, she has fibromyalgia,[3] degenerative disc disease, asthma, anxiety, and major

---

[2] "R." refers to the Certified Administrative Record filed on November 21, 2022 at Dkt. 16, which the Court has considered in its entirety.

[3] "Fibromyalgia is a disorder characterized by widespread musculoskeletal pain accompanied by fatigue, sleep, memory and mood issues."  *Fibromyalgia*, MAYOCLINIC, https://www.mayoclinic.org/diseases-conditions/fibromyalgia/symptoms-causes/syc-20354780 (last visited Sept. 12, 2023).

depression.  (*See* R. 932-33.)  Rivera particularly is anxious when around people she does not know, and was diagnosed with, among other conditions, agoraphobia in 2013. (*E.g.*, R. 283, 344.)  She lives with her husband, three adult children, and three grandchildren.  (R. 1018-19.)

## B.    The First Administrative Proceeding

On July 1, 2014, Rivera filed an application for SSI, alleging onset of disability beginning June 1, 2007.  (R. 130-59.)  The Administration denied Rivera's claims on October 10, 2014 (R. 77-84), after which Rivera requested a hearing.  (R. 86-88.)  On December 14, 2016, a hearing was held before ALJ Thomas Grabeel.  (R. 46-63.)  ALJ Grabeel issued a decision on March 1, 2017, finding that Rivera was not disabled.  (R. 7-27.)  The Administration's Appeals Council affirmed.  (R. 1-6.)

On April 26, 2018, Rivera filed a case in this District, *Rivera v. Berryhill*, No. 18-CV-3704, challenging the Administration's decision.  (R. 1074-87.)  While the case was pending, but before briefing, the parties entered into a stipulation remanding the case for further administrative proceedings.  (R. 1088.)  On February 8, 2019, the Appeals Council issued a remand order, vacating the earlier administrative decision and directing the ALJ to make a new determination.  (R. 1058-62.)  The Appeals Council directed that on remand the ALJ (1) further consider Rivera's maximum RFC, provide appropriate reasons and citations to evidence of record, and define certain terms in the ALJ's RFC formulation; (2) give further consideration to the treating and non-treating source opinions of record and explain the weight given to each one; and (3) obtain supplemental testimony from a Vocational Expert ("VE") for step five of the sequential analysis.  (R. 1061.)

**C.      The Second Administrative Proceeding**

On remand, ALJ Flor M. Suarez held a hearing on July 16, 2021, at which Rivera, represented by counsel, provided additional testimony.  (R. 1010-36.)  The ALJ held a supplemental hearing on January 20, 2022, at which testimony was taken from VE Debra Horton.  (R. 971-1002.)  On April 29, 2022, ALJ Suarez issued her 30-page decision, with extensive citation to the medical record, finding Rivera not disabled.  (R. 926-59.)

Following the requisite five-step analysis, ALJ Suarez first determined that Rivera had not engaged in substantial gainful activity since July 1, 2014, the date of her application.  (R. 932.)

At step two, the ALJ found that Rivera had several severe impairments; namely, lumbar spine degenerative disc disease, fibromyalgia, obesity, major depressive disorder, and adjustment disorder with anxiety.  (*Id.*)  The ALJ also found that several other afflictions were non-severe, including kidney disease, ovarian cysts, vision issues, bursitis,[4] tendonitis, seasonal allergies, asthma, unspecified mononeuropathy and TMJ (i.e., pain associated with the jaw), rotator cuff dysfunction, migraines, and bipolar disorder, post-traumatic stress disorder, and agoraphobia.  (R. 932-33.)  Those conditions were not severe because, variously, they were well-controlled by medicine, resolved, unsupported by objective medical evidence, or otherwise only minimally affected Rivera's functional abilities.  (*Id.*)

---

[4] "Bursitis … is a painful condition that affects the small, fluid-filled sacs – called bursae … – that cushion the bones, tendons and muscles near your joints. Bursitis occurs when bursae become inflamed."  *Bursitis*, MAYOCLINIC, https://www.mayoclinic.org/diseases-conditions/bursitis/symptoms-causes/syc-20353242 (last visited Sept. 12, 2023).

At step three, the ALJ determined that none of Rivera's impairments, either singly or together, met or medically equaled any impairment included in the Listings.  (R. 934-40.)  The ALJ first considered Listing 1.16, which addresses lumbar spinal stenosis, finding that Rivera did not require use of an assistive device and therefore not all requisite elements of the Listing were present.  (R. 935-36.)  The ALJ then considered three listings relevant to mental health; specifically, Listings 12.04 (depressive, bipolar, and related disorders), 12.06 (anxiety and obsessive-compulsive disorders), and 12.08 (personality and impulse-control disorders).  (R. 936.)

In making her determination, the ALJ conducted the requisite analysis, evaluating the so-called "Paragraph B" criteria.  (R. 936-39.)  That analysis assesses the severity of the claimant's mental impairments across four broad areas of functioning.  The Paragraph B criteria are satisfied if the claimant has one "extreme" limitation or two "marked limitations" among those functions.  "Mild" and "moderate" limitations do not suffice.  *See* 20 C.F.R § 404, Subpt. P. § 12.00(A)(2)(b), (E), (F)(2).  Here, the ALJ determined that Rivera had mild limitation in understanding, remembering, or applying information; mild limitation in her ability to concentrate, persist, or maintain pace; moderate limitation in her ability to interact with others; and moderate limitation in her ability to adapt and manage herself.  (R. 936.)  With no severe or marked limitations, Rivera did not satisfy the Paragraph B criteria and therefore did not meet or medically equal any of three relevant mental health listings.  The ALJ also considered the "Paragraph C" criteria for mental conditions that are "serious and persistent," *see* 20 C.F.R § 404, Subpt. P. § 12.00(A)(2)(c), (G), finding that those were not met either.  (R. 939-40.)

The ALJ then determined that Rivera had the RFC to perform sedentary work but with several limitations to account for postural, environmental, and mental issues.  (R. 940.)  With respect to postural limitations, Rivera can never climb ladders, ropes or scaffolds, crouch, crawl, or kneel.  She can occasionally climb ramps or stairs, and stoop. She may frequently, bilaterally, handle objects and perform gross manipulation.  She may frequently, bilaterally finger, that is, perform fine manipulation of small objects.  (*Id.*)  The RFC also includes environmental limitations limiting Rivera to occasional concentrated exposure to extreme heat, cold, wetness, humidity; bronchial irritants such as noxious fumes, odors, dust, and gases; poorly ventilated areas, dangerous moving machinery, and unprotected heights.  (*Id.*)  To account for mental health limitations, the RFC limits Rivera "to work in a low stress job, … defined as having only occasional changes in the work setting; and no fast-paced assembly line type production work.  Work must involve only occasional interaction with the public, co-workers, and supervisors after the probationary period."  (*Id.*)  Finally, "[d]ue to a combination of medical conditions, associated pain, mental impairments, and/or averse medication side effects, work must allow her to be off-task 5% of the workday, in addition to regularly scheduled breaks." (*Id.*)

In formulating the RFC, the ALJ considered, reviewed, and cited extensively from the seven-year medical record history.  (*See* R. 940-58.)  She also discussed in detail numerous opinions from treating and non-treating sources, assigned each of them weights, and explained her reasoning for assigning those weights.  The opinions generally can be assorted between those addressing physical issues and those addressing mental

issues.  The ALJ assigned some weight to almost all of the opinions provided by doctors who treated or consultatively examined Rivera for physical health.

**Opinions About Physical Functions**

| Name | Type | Date | Weight Assigned |
|------|------|------|-----------------|
| Dinshaw Bamji, MD | Treating | Sept. 26, 2014 | Little (with portions assigned some and none) |
| Benjamin Kropsky, MD | Consultative examiner | Oct. 2, 2014 | Some |
| Cameron Nienaber, MD | Treating | March 21, 2016 | Some |
| Rani Ravi, MD | Consultative examiner | Oct. 10, 2016 | Some |
| Cameron Nienaber, MD | Treating | Dec. 2016 | Some |
| Cameron Nienaber, MD | Treating | Jan. 28, 2020 | Some (with portions assigned limited and none) |
| Silvia Aguiar, MD | Consultative examiner | June 24, 2020 | Some |

The ALJ similarly assigned "some" weight to most of the opinions provided by medical sources who evaluated Rivera's mental health functioning.  The ALJ also assigned "little" or "no" weight to portions of certain opinions.

**Opinions About Mental Functions**

| Name | Type | Date | Weight Assigned |
|------|------|------|-----------------|
| Dinshaw Bamji, MD | Treating | Sept. 26, 2014 | Little (with portions assigned some) |
| L. Blackwell, PhD | Non-examining consultant | Oct. 1, 2014 | Some |
| Michael Kushner, PhD | Consultative examiner | Oct. 2, 2014 | Some |
| Dinshaw Bamji, MD | Treating | March 31, 2016 | Some |

| Haruyo Fujiwaki, PhD | Consultative examiner | Oct. 10, 2016 | Some |
|---|---|---|---|
| John Laurence Miller, PhD | Consultative examiner | June 2, 2020 | Some (with portions assigned little and none) |
| Delores Murphy Cassidy, LCSW, co-signed by Dr. Bamji ("Cassidy-Bamji") | Treating | Jan. 14, 2022 | Some (with portions assigned none) |

With respect to consulting examiner Dr. Miller, the ALJ gave weight to his opinion that Rivera has moderate limitation in interacting with others, while giving little weight to his opinion that Rivera has no degree of limitation in understanding, remembering, and applying, and no weight to his opinion that Rivera has moderate limitation in concentrating, persisting, or maintaining pace. (R. 952.) The ALJ also gave no weight to Dr. Miller's opinion that Rivera "has a marked limitation in her ability to sustain an ordinary routine and regular attendance at work and regulate emotions, control behavior, and maintain well-being." (*Id.*) The ALJ gave no weight to the 2022 Cassidy-Bamji opinion that Rivera is markedly limited in all four of the Paragraph B functional groups. (R. 956-57.) According to the ALJ, those opinions were contradicted by the provider's own notes and other evidence in the record. (R. 952-53, 956-57.) The ALJ assigned only some weight to the opinions provided in 2016 or earlier in part because they were "remote" in time. (R. 948-52.)

At step four of the sequential analysis, the ALJ found that Rivera had no past relevant work. (R. 958.) Finally, at step five, based on testimony from the VE, the ALJ found that there were available jobs that Rivera could perform, including as a "document preparer," "addresser," and "charge account clerk." (R. 958-59.) Accordingly, the ALJ found Rivera not disabled. (*Id.*)

13

**D.**     **The Instant Action**

Rivera did not seek review by the Appeals Council.   Accordingly, ALJ Suarez's decision became the final decision of the Commissioner on June 28, 2022.   Rivera filed the instant action on August 16, 2022, contesting ALJ Suarez's decision.    Rivera moved for judgment on the pleadings, and the Commissioner cross-moved.   Rivera did not file a reply.   The parties have consented to my jurisdiction for all purposes, and the case is now ripe for decision.

## DISCUSSION

Rivera argues that the ALJ's decision is not supported by substantial evidence and is tainted by five errors.   Specifically, Rivera asserts that the ALJ erred by failing to properly evaluate Rivera's fibromyalgia, did not properly consider whether Rivera's impairments met or equaled a Listing, failed to give controlling weight to the opinions of Rivera's treating doctors, did not account for Rivera's likely absenteeism from work, and did not consider the fact that Rivera could not independently take public transportation to get to and from work.   The first three of those arguments do not stand up to scrutiny.   The Court agrees, however, that the ALJ did not properly account for Rivera's likely absenteeism and inability to independently get to and from work.   Those two errors require remand.

**A.**     **The ALJ Did Not Err In Evaluating Rivera's Fibromyalgia**

Rivera's first argument is based on a mistaken premise.   Rivera argues that reversal is required because the Commissioner failed to properly assess Rivera's fibromyalgia condition.   (Pl. Mem. at 7-9.)   In particular, Rivera asserts that ALJ Suarez found that Rivera "did not have a medically determinable impairment for fibromyalgia" (*id.*

at 8), even though the record "conclusively established that Mrs. Rivera has fibromyalgia" (*id.* at 9).  Rivera incorrectly characterizes the ALJ's determination.  The ALJ expressly found that Rivera "satisfies the requirements set forth by the Social Security Administration needed for the determination that fibromyalgia is a medically determinable impairment."  (R. 934-35.)  Indeed, the ALJ determined Rivera's fibromyalgia to be one of her "severe impairments."  (R. 932.)  Accordingly, the ALJ's consideration of Rivera's fibromyalgia provides no basis for reversal.

## B.    The ALJ Did Not Err In Evaluating Rivera's Mental Functioning

Rivera's second argument concerns step three of the sequential analysis and charges the ALJ with applying the wrong legal standard and incorrectly determining that Rivera did not satisfy the Paragraph B criteria for Listing 12.04, 12.06, or 12.08.[5]  (Pl. Mem. at 10-18.)  The Court does not agree.

The four Paragraph B areas of mental functioning are:  (1) Understand, remember, and apply information; (2) Interact with others; (3) Concentrate, persist, or maintain pace; and (4) Adapt or manage oneself.  *See* 20 C.F.R § 404, Subpt. P. § 12.00(E).  For each of those functional areas, the ALJ must assess the record and assign a rating from among five levels:  (1) "none" (describing no ability to function); (2) "mild" (describing slight limitation); (3) "moderate" (describing fair functioning); (4) "marked" (describing serious limitation); and (5) "extreme" (describing inability to function).  *See* 20 C.F.R § 404, Subpt. P. § 12.00(F)(2).  When evaluating each criteria, an ALJ must consider the claimant's ability to function "independently, appropriately, effectively, and on a sustained basis."  *Id.*

---

[5] The ALJ also found that Rivera did not satisfy the Paragraph C criteria, but Rivera has not addressed that finding, let alone offer any argument as to why it would be incorrect.

Critically, the analysis must focus on the claimant's ability to use the specific area of mental functioning in a work setting.  *See* 20 C.F.R § 404, Subpt. P. § 12.00(F)(1).

In her decision, the ALJ separately evaluated each functional group.  Providing a detailed analysis, the ALJ found that Rivera has mild limitation in understanding, remembering, or applying information; moderate limitation in her ability to interact with others; mild limitation in her ability to concentrate, persist, or maintain pace; and moderate limitation in her ability to adapt and manage herself.  (R. 936-39.)  As support for each of her determinations regarding the extent of any limitation, the ALJ cited extensively from the record, including records of routine visits, findings upon examination, Rivera's own self-reported history, and testimony from the hearing.  The ALJ also relied on the opinions of Dr. Miller, at least those to which she gave weight, while explaining portions of Dr. Miller's opinions that were not consistent with the record.

Rivera asserts that the ALJ's assessment of the Paragraph B criteria nevertheless is faulty because it does not evince the ALJ's rationale for reaching her determinations.  (*E.g.,* Pl. Mem. at 11-12.)  Rivera is correct that remand may be warranted where an ALJ fails to provide a clear rationale for their decision.   As an example, Rivera relies particularly on *Aviles-Guzman v. Commissioner of Social Security*, No. 19-CV-5043, 2021 WL 663979, at *5 (E.D.N.Y. Feb. 18, 2021).  That case is distinguishable, however.  In *Aviles-Guzman*, the Court faulted the ALJ for failing to consider a treating doctor's relevant opinion in conducting the step-three analysis and for failing to give that opinion controlling weight.  *Id*. Here, although the ALJ gave no weight to the portion of the opinion of Cassidy-Bamji, one of Rivera's treating physicians, that Rivera had marked limitations in all four categories, the ALJ at least considered it, and, as explained below, gave good

reasons for affording it no weight.   The court in *Aviles-Guzman* also found the ALJ's analysis was contradicted by the medical record.   *Id.* at *6.  Here, the Court does find the ALJ's laundry list of record citations for each criteria somewhat opaque, though not impenetrable.  And while this Court might well reach a different conclusion upon de novo review, it cannot conclude that the ALJ's step-three analysis is not supported by substantial evidence.

Rivera also faults the ALJ for "cherry-pick[ing]" evidence from the record.   (Pl. Mem. at 14.)  *See, e.g.*, *Balotti v. Commissioner of Social Security*, 605 F. Supp.3d 610, 620 (S.D.N.Y. 2022) (ALJ compounded error "by cherry-picking the record"); *Artinian v. Berryhill*, No. 16-CV-4404, 2018 WL 401186, at *8 (E.D.N.Y. Jan. 12, 2018) ("Federal courts reviewing administrative social security decisions decry 'cherry picking' of relevan[t] evidence, which may be defined as inappropriately crediting evidence that supports administrative conclusions while disregarding differing evidence from the same source").  The Court does not agree with that assessment.  The ALJ did not cherry-pick favorable evidence while ignoring other evidence; to the contrary, she cited evidence both favoring and not favoring Rivera.  Like the ALJ, Rivera cites extensively from the record, but could well be deemed to be cherry-picking herself, citing only those portions of the record that could support an alternative finding.  Essentially, Rivera does no more than present the facts in a different light, seeking to have this Court weigh them differently than the ALJ.  The Court may not do so.  *See Guzman v. Astrue*, 09-CV-3928, 2011 WL 666194, at *16 (S.D.N.Y. Feb. 11, 2011) ("It is not for this Court to reweigh the evidence in a social security case") (citing *Schaal v. Apfel*, 134 F.3d 496, 504 (2d Cir. 1998)).

The Court also finds notable the relative consistency of the medical source opinions' assessment of the Paragraph B functional areas.   All three consultative examiners, Drs. Kushner, Fujiwaki, and Miller, as well as the consultative non-examiner Dr. Blackwell, almost always assigned no more than moderate limitation to any of the four functional areas.   (*See* R. 72-73, 641-42, 739, 2220-21; *see also* R. 947-48, 950-53.) That remained consistent in 2014, 2016, and 2020. The two exceptions are that in 2014 Dr. Kushner assessed Rivera's ability to interact with others and deal with stress as moderate to "at times" marked (R. 642), and that in 2020 Dr. Miller opined that Rivera's ability to regulate emotions, control behavior, and maintain well-being, i.e., her ability to adapt or manage herself, was "markedly limited" (R. 2221).   However, the ALJ gave no weight to the portion of Dr. Miller's opinion that found that Rivera had marked limitation in her ability to manage or adapt herself, because it was contradicted by Dr. Miller's own examination findings.   (R. 952.)   And even though the ALJ gave some weight to Dr. Kushner's 2014 assessment, the ALJ discounted Dr. Kushner's "moderate to at times marked" assessment because Dr. Kushner did not indicate what type of stressors would affect Rivera's functional ability.   (R. 950.)   But even if Dr. Kushner's assessment were credited as a full "marked" limitation (even though it is qualified by "at times"), it would not alter the ALJ's ultimate determination.   Qualification as a Listing requires either two marked limitations (of which there would only be one given the ALJ having assigned the Dr. Miller opinion no weight) or one extreme limitation.   None of the doctors, not even the treating doctors, assessed Rivera as having an extreme limitation.   (*See generally* R. 940-58.)

Even Rivera's treating doctor, Dr. Bamji, assessed her as having no more than moderate limitations in 2016.   (R. 913; *see also* R. 949.)   Although Dr. Bamji's assessments were different in 2014 and 2022, the ALJ provided sound reasons for discounting them.   In his September 26, 2014 opinion, Dr. Bamji assessed Rivera as being "limited" in three of the areas, including one of which was "poor," but did not assess Rivera's functioning using the Paragraph B ratings.  (R. 651.)  The ALJ correctly observed that Dr. Bamji expressly indicated that he "could not provide a medical opinion regarding the claimant's ability to do work-related activities."  (R. 949 (citing R. 652).)

The ALJ also provided a sound basis for assigning no weight to the Cassidy-Bamji opinion from 2022 that Rivera had marked limitations in all four functional areas.  Among other reasons, the ALJ explained that the Cassidy-Bamji opinion "is contrary to [Cassidy's] treatment notes which indicate that the claimant's mental status examinations are generally within normal limits."  (R. 957.)  As explained further below, that is a valid reason for discounting a treating physician's medical opinion.   *See* 20 C.F.R. 416.927(c)(2) (treating doctor's opinion will be afforded controlling weight if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence"); *Rosier v. Colvin*, 586 F. App'x 756, 757 (2d Cir. 2014) (noting among other factors considered in evaluating treating physician opinions, "the consistency of the opinion with the rest of the medical record").

In short, the Court finds that the ALJ's determination that the Paragraph B criteria were not satisfied and that Rivera does not meet or medically equal any of the Listings is supported by substantial evidence.

**C.     The ALJ Did Not Violate The Treating Physician Rule**

Rivera's third challenge to the ALJ's decision is that the ALJ "refused to properly assess the medical opinions" of Rivera's treating doctors, Dr. Bamji and Dr. Nienaber, "on the grounds that they were too 'remote.'"  (Pl. Mem. at 18-19.)  Again, the Court does not agree.

An ALJ must "evaluate every medical opinion received."  *Rodriguez v. Colvin*, No. 12-CV-3931, 2014 WL 5038410, at *17 (S.D.N.Y. Sept. 29, 2014).  Under the regulations applicable at the time Rivera's disability claim was filed, a treating physician's opinion will be given controlling weight if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record."[6]  20 C.F.R. § 416.927(c)(2); *see also Burgess v. Astrue*, 537 F.3d 117, 128 (2d Cir. 2008).  Conversely, an ALJ is not required to assign a treating physician's opinion controlling weight when it is contradicted by substantial evidence in the record.  *Veino v. Barnhart*, 312 F.3d 578, 588 (2d Cir. 2002) (noting that a treating physician's opinion is not controlling when contradicted "by other substantial evidence in the record").

When an ALJ gives a treating physician's opinion less than controlling weight, the ALJ must give "good reasons" for doing so.  20 C.F.R. § 416.927(c)(2) (stating that the agency "will always give good reasons in our notice of determination or decision for the

---

[6] The regulations for evaluating medical opinions were amended in 2017, but the changes are only applicable to claims filed on or after March 27, 2017.  *See* 20 C.F.R. §§ 404.1527, 404.1520c; *Revisions to Rules Regarding the Evaluation of Medical Evidence*, 82 Fed. Reg. 5844-01, 5844, 5867-68 (Jan. 18, 2017).  Because Rivera's claim was filed before that date, the Court applies the earlier regulations.

weight we give [the claimant's] treating source's medical opinion"); *Snell v. Apfel*, 177 F.3d 128, 133 (2d Cir. 1999); *Schaal*, 134 F.3d at 505.  "Failure to provide 'good reasons' for not crediting the opinion of a claimant's treating physician is a ground for remand." *Snell*, 177 F.3d at 133; *see also Schaal*, 134 F.3d at 505 ("Commissioner's failure to provide 'good reasons' for apparently affording no weight to the opinion of plaintiff's treating physician constituted legal error").

If the ALJ decides not to give controlling weight to a treating physician's opinion, the ALJ must determine how much weight, if any, to give that opinion.  *Estrella v. Berryhill*, 925 F.3d 90, 95 (2d Cir. 2019).   In doing so, the ALJ must "explicitly consider" the following, non-exclusive "*Burgess* factors":  "(1) the frequen[cy], length, nature, and extent of treatment; (2) the amount of medical evidence supporting the opinion; (3) the consistency of the opinion with the remaining medical evidence; and (4) whether the physician is a specialist."  *Selian*, 708 F.3d at 418 (citing *Burgess*, 537 F.3d at 129 (citing 20 C.F.R. § 404.1527)).   While failure to explicitly apply the *Burgess* factors is a procedural error, a reviewing court will not reverse the Commissioner's decision when the Commissioner has given "good reasons" for its weight assessment.  *Estrella*, 925 F.3d at 96.  "Good reasons" are reasons that assure the reviewing court that "the substance of the treating physician rule was not traversed."  *Id.* (internal quotation marks omitted).

Adherence to the treating physician rule is "all the more important in cases involving mental health," such as this one.   *Flynn v. Commissioner of Social Security Administration*, 729 F. App'x 119, 122 (2d Cir. 2018).  That is because mental health impairments are "not susceptible" to certain diagnostic tools that can be used to determine physical impairments during an exam, *id.*, and "[a] mental health patient may have good

days and bad days [and] may respond to different stressors that are not always active," *Bodden v. Colvin*, No. 14-CV-08731, 2015 WL 8757129, at \*9 (S.D.N.Y. Dec. 14, 2015). A person with cyclical mental health issues, who "'half the time … is well enough [to] work, and half the time … is not[,] … could not hold down a full-time job.'" *Estrella*, 925 F.3d at 97 (quoting *Bauer v. Astrue*, 532 F.3d 606, 609 (7th Cir. 2008)). Accordingly, a longitudinal understanding of the claimant's impairment is particularly important with respect to mental health conditions and "cannot be readily achieved by a single consultative examination." *Bodden*, 2015 WL 8757129 at \*9 (collecting cases); *Estrella*, 925 F.3d at 98 ("a one-time snapshot of a claimant's status may not be indicative of her longitudinal mental health").

"The same factors [as applied to determine the weight given to a treating doctor's opinion] also must be considered with respect to what weight to give non-treating medical sources, 'with the consideration of whether the source examined the claimant or not replacing the consideration of the treatment relationship between the source and the claimant.'" *McGinley v. Berryhill*, No. 17-CV-2182, 2018 WL 4212037, at \*12 (S.D.N.Y. July 30, 2018) (quoting *Butts v. Commissioner of Social Security*, No. 16-CV-874, 2018 WL 387893, at \*6 (N.D.N.Y. Jan. 11, 2018)), *R. & R. adopted*, 2018 WL 4211307 (S.D.N.Y. Sept. 4, 2018). Although the Second Circuit has cautioned that ALJs should not rely heavily on the findings of consultative physicians that arose from a single examination, *Cruz v. Sullivan*, 912 F.2d 8, 13 (2d Cir. 1990), a consultative physician's opinion may nonetheless constitute substantial evidence, *see Petrie v. Astrue*, 412 F. App'x 401, 406 (2d Cir. 2011) (affirming ALJ's reliance on findings of two consultative examiners in declining to afford treating physicians controlling weight).

22

Here, the ALJ complied with the treating physician rule.  She analyzed each medical opinion of record and explained the basis for the weights she afforded each opinion.  The ALJ explained that she gave Dr. Bamji and Dr. Nienaber's opinions only some or little weight not only because they were remote in time but for other reasons as well.  For example, with respect to Dr. Bamji's 2014 opinions, the ALJ observed that those opinions "were based on the claimant's reports and not on clinical or objective findings," that Dr. Bamji's opinion of Rivera's exertional limitations was "outside her scope of treatment," that Dr. Bamji "could not provide a medical opinion regarding the claimant's ability to do work-related activities," and that Dr. Bamji's opinions about Rivera's inability to work for at least 12 months were "inconsistent with the other substantial evidence of record, including Dr. Bamji's own treatment notes."  (R. 949, 953.)  And with respect to the Cassidy-Bamji 2022 opinion, the ALJ found, among other concerns, that the opinion was "contrary to [Ms. Cassidy]'s treatment notes which indicate that the claimant's mental status examinations are generally within normal limits."  (R. 957.)

Similarly, the ALJ noted that in 2016, Dr. Nienaber "did not cite to any objective or clinical findings in support of his opinions," instead only repeating Rivera's claimed symptoms (R. 954), and that the record evidence supported less extreme limitations than Dr. Nienaber assessed (R. 954-55).  For Dr. Nienaber's 2020 opinion, the ALJ fully credited some parts but assigned less weight to other parts, explaining in each instance why the particular weight was given and how the ALJ's RFC determination accounted for the limitations assessed by Dr. Nienaber.  (R. 956.)  Those were "good reasons" for not giving the treating doctors controlling weight.

Moreover, the ALJ was attentive to the longitudinal record of Rivera's impairments (*see*, *e.g.*, R. 948 (commenting that "the majority of mental status examinations ***throughout the record*** show unremarkable findings") (emphasis added)) while giving only some weight to the consultative doctors who examined Rivera no more than once. But even the consultative examining doctors took account of Rivera's longitudinal history. (R. 639-40 (Dr. Kushner); R. 737-38 (Dr. Fujiwaki); R. 2218-19 (Dr. Miller).)  And, although the ALJ did not explicitly address all the *Burgess* factors in evaluating the opinions of each doctor, the Court finds that "the substance of the treating physician rule was not traversed." *Estrella*, 925 F.3d at 96.

Rivera contends that the ALJ nevertheless violated the treating physician rule by discounting the treating doctors' opinions as remote in time. (Pl. Mem. at 19.) That argument ignores all the reasons, having nothing to do with remoteness, that the ALJ gave for discounting the opinions of both Dr. Bamji and Dr. Nienaber as described above. The argument also fails to account for the fact that the ALJ assigned only "some weight" not only to the treating doctors, but also to each of the consultative medical opinions from 2014 and 2016 in part because they too were remote in time.  Because the ALJ discounted the opinions of both the treating and non-treating physicians based on remoteness, remoteness does not explain the ALJ's comparative assessment of the medical opinions.  In other words, remoteness was not a factor contributing to the ALJ not having given the treating doctors' opinions controlling weight over the non-treating doctors.

Rivera's argument also overlooks the fact that the record included, and the ALJ reviewed, a January 28, 2020 medical source opinion from Dr. Nienaber, as well as the

Cassidy-Bamji opinion co-signed by Dr. Bamji in 2022.  The ALJ thus had non-remote opinions from Rivera's treating doctors for both mental and physical limitations.  Notably, the ALJ did **not** discount either of those opinions for remoteness.  (*See* R. 956-57.) Finally, Rivera contends that the ALJ "was required to recontact the treating physicians to resolve ambiguities."  (Pl. Mem. at 19.)  But the ALJ did not refer to any ambiguity in need of clarification, and Rivera does not point to any.

In short, the Court concludes that the ALJ did not violate the treating physician rule, and that his weighting of the medical opinions in that respect is supported by substantial evidence.[7]

### D.   The ALJ Failed To Properly Account For Rivera's Absences And Inability To Take Public Transportation Alone

Although Rivera's first three bases for remand do not pass muster, her last two do. The Court considers them together as they are related.  Specifically, the ALJ failed to properly account for the extent to which Rivera would be absent from work and her inability to independently take public transportation.

#### 1.  Absenteeism

At the 2022 hearing, the VE testified that Rivera would not be able to maintain employment if she was absent more than approximately one time per month or ten times per year, which includes days on which she either arrived late or left early.[8]  (Dkt. 988-92.)  Of the doctors who opined about Rivera's likely absenteeism, all assessed that she

---

[7] As discussed in the next section, the Court does find fault with the ALJ's assessment of the medical opinions concerning Rivera's absenteeism.

[8] Rivera incorrectly asserts that neither the ALJ nor her attorney inquired with the VE about the impact of Rivera's absenteeism.  (Pl. Mem. at 21.)

would be absent more than once per month.  The Cassidy-Bamji opinion in 2022 indicated that Rivera would be absent as many as 20 times a month.  (R. 3640; *see also* R. 956-57.)  Dr. Nienaber opined in 2020 that Rivera would be absent more than four days per month.  (R. 2561; *see also* R. 956.)  And, although not specifying a number of days per month, Dr. Miller opined in 2020 that Rivera's "ability to sustain an ordinary work routine and regular attendance at work … is markedly limited."  (R. 2221; *see also* R. 952.)

The ALJ rejected each of those opinions.  The ALJ concluded that Dr. Miller's opinion was "contradicted by Dr. Miller's own examination findings where he reported that the claimant was cooperative with adequate social skills, and his notations that the claimant reported that she has a friend, poor family relationships, she cooks, prepares food, bathes and grooms herself; and his finding that the claimant exhibited good insight and judgment."  (R. 952.)  The Court is troubled by that reasoning.  Although the ALJ gave good reasons for not giving Rivera's treating doctors controlling weight, the Court finds that the ALJ did not provide good reason for rejecting Dr. Miller's opinion about absenteeism.  None of what the ALJ describes above contradicts Dr. Miller's opinion regarding Rivera's marked inability to maintain "regular attendance at work" or the conditions that contribute to that limitation, including Rivera's anxiety and agoraphobia.

The ALJ characterized Nienaber's more-than-four-days opinion as "speculative" (R. 956), and the Cassidy-Bamji 20-days opinion as "speculative and not supported" (R. 957).  That may be so; the Cassidy-Bamji opinion means that Rivera would be absent virtually every work day of each month.  But without having credited any of the opinions concerning the frequency of Rivera's absenteeism, the ALJ simply substituted her own opinion for theirs ***without any medical opinion*** to support the ALJ's assessment and

without any compelling reason for doing so.  That was error.  *See Riccobono v. Saul*, 796 F. App'x 49, 50 (2d Cir. 2020) ("while the ALJ may have given appropriate reasons for not according controlling weight to some of the opinions of Riccobono's treating physicians, she must still base her conclusion on *some* medical opinion or otherwise articulate the overwhelmingly compelling reasons for not doing so"); *Garcia v. Kijakazi,* No. 21-CV-1895, 2022 WL 3442314, at *14 (S.D.N.Y. Aug. 11, 2022) (remanding and finding that, "[a]t the very least, the ALJ had a duty to … obtain medical source opinions on whether Garcia's impairments would lead to her being absent more than once a month").

At the same time, the ALJ acknowledged elsewhere in her opinion that Rivera attended mental health sessions with her therapist (weekly) and psychiatrist (monthly). (R. 947.)  Yet the ALJ nowhere considered whether Rivera's having to attend those appointments would result in her being absent from work more than one day a month. *See, e.g.*, *Renee S. v. Commissioner of Social Security*, No. 20-CV-1546S, 2022 WL 2841916, at *5 (W.D.N.Y. July 21, 2022) (remanding where ALJ failed to account for absenteeism caused by claimant's monthly treatments); *Bellinger v. Commissioner of Social Security*, No. 3:17-CV-692, 2018 WL 6716092, at *2-4 (D. Conn. Dec. 21, 2018) (remanding where ALJ failed to address claimant's need to be absent for weekly treatments); *but see Albert P. v. Commissioner of Social Security*, No. 21-CV-1113, 2023 WL 2306687, at *7 (N.D.N.Y. March 1, 2023) (rejecting argument that ALJ erred by accounting for plaintiff's treatment sessions because it was not "clear that the mere fact of needing to attend physical therapy would require plaintiff to be absent for an entire day of work, particularly as the relevant physical therapy treatment records indicate that the sessions typically lasted for approximately an hour").

To the contrary, the ALJ cited Rivera's ability to regularly attend her appointments as evidence contradicting the opinion that she would not be able to regularly attend work: "there is no evidence in the record that the claimant had any difficulties in making it to her weekly psychotherapy appointments or monthly psychiatry appointments." (R. 947.) But that too was an improper conclusion to draw. The ability of a claimant to attend medical appointments is not proof that she is not disabled. *See Rucker v. Kijakazi*, 48 F. 4th 86, 93 (2d Cir. 2022) ("Rucker's ability to attend counseling sessions – in which she is receiving treatment to alleviate her symptoms – has no bearing on her ability to attend work. … [R]elying on attendance at medical appointments is unhelpful in determining whether an individual with significant psychiatric issues can consistently show up and successfully function in a work environment"); *Narvaez v. Commissioner of Social Security Administration*, No. 18-CV-01130, 2019 WL 4386030, at *11 (S.D.N.Y. Sept. 13, 2019) ("The ALJ pointed to the fact that Narvaez regularly attended treatment sessions, but that fact does not undermine Dr. Shah-Thum's opinion that she would be unable to fulfill the attendance requirements of full-time work"). In concluding otherwise, the ALJ erred.

As discussed next, the ALJ compounded the error by failing to account for Rivera's inability to even get to work.

### 2. Lack Of Transportation

To be able to work, a person must be able to get to work.[9] Courts thus have found error when an ALJ fails to adequately consider the extent to which a claimant can even

---

[9] While the need to travel to and from work may be somewhat lessened – for some – in today's economy where a variety of employees work from home, the source on which the VE and ALJ relied – the Dictionary of Occupational Titles – was published decades ago,

get to work, particularly when there is evidence that the claimant cannot independently take public transportation.  *E.g.*, *Garcia*, 2022 WL 3442314, at *14 (finding error where, "[d]espite questioning the VE about the significance of absenteeism, the ALJ again ignored Garcia's inability to independently take public transportation and otherwise failed to develop the record to determine whether Garcia would be absent from work more than one day a month"); *Velasquez v. Barnhart*, No. 04-CV-9017, 2006 WL 3431190, at *4 (S.D.N.Y. Nov. 29, 2006) (remanding so that ALJ could consider the impact of plaintiff's "inability to use public transportation to travel to the jobs available to her"); *Grubb v. Chater*, 992 F. Supp. 634, 639-40 (S.D.N.Y. 1998) (remanding where ALJ ignored testimony and evidence related to plaintiff's inability to travel via public transportation); *Rivera v. Sullivan*, 771 F. Supp. 1339, 1360 (S.D.N.Y. 1991) (remanding solely for calculation of benefits because record showed that plaintiff could not travel on public transportation); *Andino v. Bowen*, 665 F. Supp. 186, 192 (S.D.N.Y. 1987) ("in light of [plaintiff]'s inability to take the bus or subway by herself, it is not only clear that [plaintiff] is unable to work, but it is hard to imagine how she could even get to work on a regular basis).[10]

---

long before the time that the popularity and capability for remote work emerged.  *See Moldonado v. Commissioner of Social Security,* No. 21-CV-7594, 2023 WL 243617, at *10 (S.D.N.Y. Jan. 23, 2023) ("some have recognized [the DOT] as antiquated and containing numerous obsolete positions that have been overtaken by progress and modernization over the last 45 years").  Moreover, whether someone can work remotely on a full-time basis is entirely job and employer dependent.

[10] The Commissioner attempts to distinguish *Garcia* and other cases cited by Rivera on the basis that the ALJs' decisions in those cases "did not discuss alleged travel limitations whatsoever."  (Def. Mem. at 23.)  But the Court fails to see any meaningful distinction. Here, the ALJ did not address the implications of Rivera's inability to independently travel to and from work.  The Commissioner notes that the ALJ observed that "psychiatric treatment records from 2018 through 2021 did not reference Plaintiff's conditions of PTSD

Here, there is abundant evidence in the record that Rivera cannot independently travel, including on public transportation.  For instance, as recounted by the ALJ, the mental health opinions in 2014 and 2016 consistently reflected Rivera's reporting that she could not take public transportation unaccompanied.  (*See* R. 943 (Dr. Bamji 2014 and Dr. Kropsky 2014); 950 (Dr. Bamji 2016); *see also* R. 641 (Dr. Kushner reporting same in 2014); 739 (Dr. Fujiwaki reporting same in 2016).)  In 2020, Dr. Miller noted that Rivera reported that she does not take public transportation because of panic attacks.  (R. 2221.) Rivera's testimony was to the same effect.  (R. 1020, 1029, *see also* R. 1025 (testifying that she does not go out alone due to anxiety of being alone).)  Even the ALJ recognized that Rivera "consistently reported that … she does not travel alone."  (R. 942.)  The record thus is not short on facts as the Commissioner suggests by characterizing Rivera's briefing of the relevant facts as "perfunctory."   (Def. Mem. at 21.)    Neither the Commissioner nor the ALJ cites evidence that Rivera could independently commute, and the Court is not aware of any in the record.

The Commissioner nonetheless references Rivera's reporting that she could take public transportation when accompanied by a family member.  (Def. Mem. at 22.)  There is no evidence in the record, however, that Rivera's family members would be able to regularly accompany her to and from work.  The Commissioner also points to the fact that Rivera testified she had a driver's license.  (Def. Mem. at 22; R. 1019.)  But that overlooks Rivera's consistently reporting to doctors that she could not drive due to anxiety and

---

and agoraphobia and found that these impairments did not more than minimally affect Plaintiff's ability to perform basic work activities and therefore were non-severe." (*Id*.)  But that finding by the ALJ did not address the issue of Rivera's inability to independently take public transportation due to a combination of her severe and non-severe disorders.

concern for her reflexes and that she had not driven for at least the past two to three years (as of 2020).  (R. 944, 946; *see also* R. 1019-20 (Rivera testifying in 2022 hearing that she does not use her driver's license and cannot travel by herself).)

To be sure, the ALJ determined that while Rivera's impairments could be expected to cause the symptoms she described, they were not as severe as she claimed based on the objective medical record.  (R. 942, 946-47.)  But the ALJ did not question Rivera's inability to take public transportation unaccompanied; to the contrary, the ALJ cited that very inability as support for her assessment of one of Dr. Bamji's opinions.  (R. 950.)  The ALJ even asked the VE about the effect of a hypothetical individual like Rivera being "limited to jobs that do not require the individual to travel *as part of their job*," including travel by public transportation.  (R. 986 (emphasis added).)  Yet, the ALJ ignored that very issue with respect to the individual's ability to travel by public transportation to and from work.

In sum, substantial evidence does not support the ALJ's conclusion regarding Rivera's not being absent more than once a month, and the ALJ compounded her error by failing to account for Rivera's inability to travel independently to and from work. Accordingly, remand is required for proper consideration of those issues.

## CONCLUSION

For the reasons set forth above, Rivera's motion should be granted and the case remanded for proper consideration by the Commissioner.  To the extent not set forth above, the Court has considered the parties' arguments and finds them to be without merit.  Pursuant to sentence four of 42 U.S.C. § 405(g), Rivera's motion is GRANTED

and the Commissioner's motion is DENIED.  The Clerk of Court is directed to enter

Judgment in favor the Plaintiff and to close the case.

SO ORDERED.

_____
ROBERT W. LEHRBURGER
UNITED STATES MAGISTRATE JUDGE

Dated:  September 15, 2023
        New York, New York

Copies transmitted on this date to all counsel of record.

32